# EXHIBIT

# A

**NYC DEPARTMENT OF FINANCE OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2020020501137001002E4069

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 26 |
|---|---|

| Document ID: **2020020501137001** | Document Date: 08-14-2018 | Preparation Date: 02-06-2020 |
|---|---|---|

Document Type: ASSIGNMENT, MORTGAGE
Document Page Count: 24

| PRESENTER: | RETURN TO: |
|---|---|
| BLACKACRE TITLE AGENCY CORP<br>2900 WESTCHESTER AVENUE<br>PURCHASE, NY 10577<br>914-481-5000<br>MMENDICINO@BATITLE.COM | THE GALINN FUND LLC<br>399 KNOLLWOOD ROAD<br>WHITE PLAINS, NY 10603 |

## PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| MANHATTAN | 589 | 40 | Entire Lot | 307 AVENUE OF THE AMER |

Property Type: COMMERCIAL REAL ESTATE

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| MANHATTAN | 589 | 39 | Entire Lot | 309 AVENUE OF THE AMER |

Property Type: COMMERCIAL REAL ESTATE

## CROSS REFERENCE DATA

CRFN: 2017000326057

## PARTIES

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| SEI INSIEME LLC<br>5 HECKSCHER DRIVE<br>HALESITE, NY 11743 | THE GALINN FUND LLC<br>399 KNOLLWOOD ROAD<br>WHITE PLAINS, NY 10603 |

☒ Additional Parties Listed on Continuation Page

## FEES AND TAXES

| Mortgage : | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | |
| MTA: | $ | 0.00 | |
| NYCTA: | $ | 0.00 | |
| Additional MRT: | $ | 0.00 | |
| TOTAL: | $ | 0.00 | |
| Recording Fee: | $ | 160.00 | |
| Affidavit Fee: | $ | 0.00 | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed     02-06-2020 15:37
City Register File No.(CRFN):
**2020000049208**

*Annette M Hill*

*City Register Official Signature*

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2020020501137001002C42E9

| RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION) | PAGE 2 OF 26 |
|---|---|

Document ID: **2020020501137001**    Document Date: 08-14-2018    Preparation Date: 02-06-2020
Document Type: ASSIGNMENT, MORTGAGE

**PARTIES**

**ASSIGNOR/OLD LENDER:**
CIN CIN LLC
5 HECKSCHER DRIVE
HALESITE, NY 11743

## COLLATERAL OMNIBUS ASSIGNMENT

SEI INSIEME LLC, a New York limited liability company having an address at 5 Heckscher Drive, Halesite, NY 11743 and CIN CIN LLC, a New York limited liability company having an address at 5 Heckscher Drive, Halesite, NY 11743 ("Assignor"), for TEN DOLLARS ($10.00) and other good and valuable consideration, the receipt and sufficiency of which are acknowledged, hereby sells, transfers, assigns, delivers, sets-over and conveys to THE GALINN FUND LLC, a New York limited liability company having its principal place of business at 399 Knollwood Road, Suite 203, White Plains, NY 10603 ("Assignee"), its successors and assigns, all right, title and interest of Assignor in and to:

The mortgage(s) and note(s) for the loan identified on Exhibit "A" attached hereto (as same may have been amended or modified, the "Mortgage and Note"), including, without limitation, to the extent they exist, all of Assignor's right, title and interest in any claims, collateral, U.C.C. financing statements, security agreements, insurance policies, title insurance policies, certificates of deposit, letters of credit, escrow accounts, pledge agreements, engineering reports, environmental reports and assessments, environmental indemnities, appraisals, lockbox agreements, guarantees, performance bonds, demands, assignments of leases and rents, borrower certificates, member consents, causes of action and any other collateral from and/or against the borrower(s) under the Note and/or executed and/or delivered in or to or with respect to the Mortgage and Note, together with any other agreements, documents, or instruments executed and/or delivered in connection with the Mortgage and Note.

This assignment is made without warranty or representation, express or implied, by, or recourse against, the Assignor of any kind or nature whatsoever.

It is expressly understood and agreed that this Assignment is made as collateral for a loan originated by Assignee to Assignor in accordance with the Collateral Assignment of Mortgages and Notes dated of even date herewith to secure a Secured Promissory Note dated of even date herewith.

IN WITNESS WHEREOF, Assignor has executed this instrument to be effective as of the 14 day of August, 2018.

SEI INSIEME LLC
By: _____
William Gildo Rainero, Managing Member

CIN CIN LLC

Name:     William Gildo Rainero, Authorized Signatory

**ACKNOWLEDGMENT - inside of New York State (RPL-309b)**

STATE OF NEW YORK          ]
COUNTY OF WESTCHESTER    ]     s.s.:

On the _____14_____ day of August in the year 2018 before me, the undersigned, a Notary Public in and for said State, personally appeared, **William Gildo Rainero**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed this instrument.

Notary Public

JOSEPH RABADI
Notary Public, State of New York
No. 01RA6334580
Qualified in Westchester County
Commission Expires December 21, 2019

## EXHIBIT A

1. Note dated August 4, 2017 payable to, **SEI INSIEME LLC** and **CIN CIN LLC** in the amount of $5,000,000.00.

2. That certain Mortgage executed by 307 Assets LLC payable to, **SEI INSIEME LLC** and **CIN CIN LLC** in the amount of $5,000,000.00, dated August 4, 2017 in the amount of $5,000,000.00 and recorded August 31, 2017, in CRFN 2017000326057.

## SECURED CONVERTIBLE PROMISSORY NOTE

**$5,000,000.00**

New York, New York
August 4, 2017

**FOR VALUE RECEIVED**, 307 ASSETS LLC, a New York limited liability company, having an address at c/o Metrovest, 11 East 44th Street, Suite 1001, New York, New York 10017 ("Maker"), hereby unconditionally promises to pay to CIN CIN LLC, a New York limited liability company, having an address at 80 Washington Place, New York, New York 10011 ("Cin Cin"), and SEI INSIEME LLC, a New York limited liability company, having an address at 80 Washington Place, New York, New York 10011 ("Sei Insieme") (Cin Cin and Sei Insieme are, individually and collectively, the "Holder"), the Principal amount of **FIVE MILLION DOLLARS ($5,000,000.00)** in lawful money of the United States of America, plus any accrued but unpaid interest thereon as provided below.

1.   **Interest**. The outstanding principal amount of this secured convertible promissory note (this "Note") shall bear interest, in arrears, at the rate of six (6.00%) percent per annum. Notwithstanding the foregoing, the obligation of Maker to make payments of interest shall be subject to the limitation that payments of interest shall not be required to be made to Holder to the extent that Holder's receipt thereof would not be permissible under the laws applicable to Holder limiting rates of interest which may be charged or collected by Holder; provided, however, that if at any time and for any reason whatsoever, the interest rate payable on this Note shall exceed the maximum rate of interest permitted to be charged by Holder to Maker under applicable law, that portion of each sum paid attributable to that portion of such interest rate that exceeds the maximum rate of interest permitted by applicable law shall be deemed a voluntary prepayment of principal.

2.   **Payments**. Commencing on the date which is one (1) month after the date of this Note and on the same calendar day thereafter until the Maturity Date (as hereinafter defined), Maker shall make payments of interest, each in the amount of Twenty-Five Thousand Dollars ($25,000.00), or such lesser amount as shall constitute the full amount of accrued interest on the principal balance of this Note, as the same shall be reduced pursuant to the further terms hereof (each an "Interest Installment"). On the date that is the earlier of (i) the Maturity Date, or (ii) the occurrence of an Event of Default (as hereinafter defined), after the expiration of any and all applicable notice and/or cure periods, Five Million Dollars ($5,000,000.00) and unpaid interest and all other sums owing hereunder or the then outstanding principal balance of this Note ("Principal Installment") (Interest Installment and Principal Installment are, individual and collectively, "Installment") shall be due and payable without notice or demand. If an Installment is not paid in full when it is due, and such default shall continue uncured for ten (10) days, the unpaid balance of such Installment shall bear late interest at the rate of eighteen (18%) percent per annum from its due date until such Installment is fully paid. Any payment made under this Note shall be applied first to the current Installment and then to the unpaid balance of any prior outstanding Installment. Interest on the outstanding principal balance of the Loan shall be calculated by multiplying (a) the actual number of days elapsed in the period for which the calculation is being made by (b) the interest rate divided by three hundred sixty (360) by (c) the outstanding principal balance. For purposes of this Note the term "Maturity Date"

-1-

shall mean the earlier of (a) thirty-six (36) months from the date hereof, or (b) the effective date of the Holder's conversion right set forth in Section 9 hereof, provided Holder converts the entire principal amount of this Note.

3.     **Security**.  This Note is secured by a mortgage (the "Mortgage") on the land designated as Block 589, Lots 39 and 40, on the New York County Tax Map (the "Mortgaged Property").  This Mortgage shall be a second (2nd) mortgage, subject and subordinate only to acquisition financing of up to $8,000,000.00 secured by a first mortgage lien on the Mortgaged Property, which amount may be increased after the first (1st) anniversary of the date of this Note. The holder of such acquisition financing and, if applicable, subsequent refinancing, shall be hereinafter referred to as the "First Mortgagee." If required by the First Mortgagee, Holder shall enter into a usual and customary form of subordination and inter-creditor agreement with respect to this Note and the Mortgage.

4.     **Place of Payment**.  Payments of principal, interest and any other amounts payable hereunder are to be made to Holder at the above address or such other place as Holder shall designate to Maker in writing.

5.     **Prepayment**.  Subject to the following sentence, this Note may be prepaid in whole or in part at any time without premium or penalty, upon five (5) days' prior written notice to Holder, provided that Maker shall at such time pay any and all accrued interest, and any and all charges and other sums due hereunder.  Prepayment of this Note shall not affect Holder's conversion right set forth in Section 9 hereof, which right shall survive such prepayment.  Upon such payment-in-full, at maturity or otherwise, the lien of the Mortgage shall be assigned to Maker's mortgage lender, or as Maker shall otherwise direct in writing.

6.     **Transferability**.  Holder shall have the right to assign, sell, exchange, gift, bequest, hypothecate, pledge, grant a security interest in or otherwise dispose of in any way this Note (collectively, "Transfers") and shall give prompt written notice of any such Transfers to Maker. This Note shall be binding upon Maker and its successors and shall inure to the benefit of the holder of this Note and any successors and assigns.  In the event Holder Transfers this Note, Holder's conversion right, as further set forth in Section 9 of this Note, shall thereafter be deemed terminated, null void and of no further and/or effect and Holder, and/or any successor or assigns of Holder, shall have no right to convert any portion of this Note into a Conversion Interest (as hereinafter defined).

7.     **No Withholding of Taxes**.  All payments by Maker under this Note shall be made to Holder free and clear of, and without withholding or deduction for, any and all present or future taxes (including, without limitation, income or withholding taxes), levies, imposts, or duties imposed by any government or any political subdivision thereof; if any taxes are required to be withheld from any amounts payable to Holder hereunder, Maker shall so withhold and pay such taxes, and the amounts payable to Holder hereunder shall be decreased in the amount of such taxes paid on behalf of Holder.

42521345;2

8.    **Events of Default.**

    (a)    For purposes hereof, the occurrence of any of the following events shall constitute an "Event of Default":

        (i)    the failure of Maker to pay any amount, including without limitation an Installment, when due hereunder, which failure shall continue for ten (10) days after written notice of default;

        (ii)    the transfer of the land designated as Block 589, Lots 39 and 40, on the New York County Tax Map. Notwithstanding the foregoing, Maker shall be permitted to transfer the Mortgaged Property to an entity or entities affiliated with Maker and/or any of the principals thereof, or as otherwise permitted pursuant to the operating agreement of Holdco (as hereinafter defined) and/or any members thereof, provided Holdco (hereinafter defined) shall give Holder prompt written notice of such permitted transfer. Holder acknowledges and agrees that, notwithstanding anything to the contrary contained in this Note, transfers of interest in Maker or the members of Maker shall not be deemed a violation of this Section 8(a)(ii);

        (iii)    the voluntary encumbrance of the land designated as Block 589, Lots 39 and 40, on the New York County Tax Map, other than permitted pursuant to Section 3 above and otherwise as permitted hereunder;

        (iv)    the failure of Maker to cause the issuance to Holder the Conversion Interest (as defined in Section 9 hereof) in accordance with Section 9 hereof;

        (v)    the filing by Maker of any case, proceeding or other action relating to it in bankruptcy or seeking any relief under any bankruptcy, insolvency, or similar act or law of any jurisdiction, domestic or foreign, now or hereafter existing; Maker shall apply for a receiver, custodian or trustee for itself or for all or a substantial part of its property; Maker shall make a general assignment for the benefit of its creditors; Maker shall be unable to, or shall admit in writing its inability to, pay its debts as they become due; or Maker shall take any action indicating its consent to, approval of, or acquiescence in any of the foregoing;

        (vi)    default under any indebtedness or liability for borrowed money of Maker (other than this Note) which is secured by a lien on the Mortgaged Property;

        (vii)    if any of the following should occur: (a) the filing of any petition by or against Maker, (b) the commencement of any proceedings for the relief or readjustment of any indebtedness of Maker either through reorganization, composition, extension or otherwise, under any law relating to bankruptcy, insolvency or reorganization or relief of debtors, (c) the taking of any action by Maker to authorize any of the foregoing, which, in the case of an involuntary filing or petition, remains undismissed for ninety (60) days, (d) the admission in writing by Maker of its inability to pay its debts generally, and (e) the making by Maker of a general assignment for the benefit of creditors, or the taking advantage by Maker of any insolvency law;

-3-

42521345;2

(viii)   any seizure, vesting or intervention by or under authority of a government, by which the management of Maker is displaced or its authority in the conduct of its business is curtailed;

(ix)   Any other filing of any case, proceeding or other action against Maker in bankruptcy or seeking any relief under any bankruptcy, insolvency, or similar act or law of any jurisdiction, domestic or foreign, now or hereafter existing or a receiver, custodian or trustee for Maker or for all or a substantial part of their property shall be appointed and if each such proceeding is not stayed, vacated or dismissed within 60 days of the filing thereof and, if stayed, such proceeding is not vacated or dismissed within 30 days of the expiration of such stay.

(b)   Upon the occurrence of any Event of Default, the principal amount and any other amount due in respect of this Note shall, upon not less than thirty (30) days prior written notice to Maker, automatically and immediately become due and payable; all without further presentment, protest, demand or notice of any kind, all of which are expressly waived by Maker.

9.   **Conversion Right.**

(a)   **Right to Convert.** Holder shall have the one-time right, but not the obligation, to convert the entire principal amount of this Note (the "Conversion Payment") on the Conversion Date (as hereinafter defined) without the payment of any additional consideration thereof, into thirty (30%) percent of the membership interest of The Emilio Holdings LLC, a New York limited liability company ("Holdco") which is the sole member of Maker (the "Conversion Interest"). In the sole discretion of the Holder, on the Conversion Date, the Holder may increase the Conversion Interest to forty-nine point ninety-nine (49.99%) percent of the membership interest of Holdco by adding $2,500,000.00 cash to the Conversion Payment. Holder may exercise the option to purchase less than thirty (30%) percent of the membership interest of Maker and to convert less than the entire principal amount of this Note, on a pro-rata (and dollar-for-dollar) basis; however, in no event may Seller convert less than $2,500,000.00 of this Note into an equity interest in Holdco. The term "Conversion Date" shall mean any day being within the last ten (10) days prior to the one (1) year anniversary of this Note. For purposes of clarification, the term "membership interest of Holdco " shall mean all issued and outstanding membership interest of Holdco after (x) treating as exercised all options (or other agreements) to purchase membership interest of Holdco, (y) treating as exercised all other conversion rights to acquire membership interest of Holdco, and treating as exercised Holder's conversion right set forth in this Section 9. By way of example, if Holder shall convert $2,500,000.00, the principal balance of the Note shall be reduced to $2,500,000.00 and the Holder shall receive a fifteen (15%) interest in Holdco.

(b)   **Mechanics of Conversion.**

(i)   On the Conversion Date, the Holder shall send to the Maker notice ("Conversion Notice") that the Holder has exercised its conversion right as set forth in Section 9(a) hereof. Upon the request of Holder, which request shall not be made before the date being fifteen

(15) days following the Conversion Date, Maker shall cause Holdco shall deliver to Holder (A) to the extent one exists, a balance sheet for Holder dated no more than sixty (60) days before the Conversion Date, (B) most recent version of the Articles of Organization of Holdco, as amended and restated, (C) most recent version of the Operating Agreement of Holdco, as amended and restated, (D) list of members of Holdco, and (E) list of outstanding options and rights of first refusal/offer related to Maker, Holdco, or the Mortgaged Property.

(ii)    Within five (5) business days of Holder sending the Conversion Notice to Maker, simultaneously (x) Maker shall deliver to Holder instruments of assignment that legally transfer the Conversion Interest to Holder and (y) the members of Holdco, including Holder, shall enter into an amended and restated operating agreement of Holdco in the form attached hereto as Exhibit A.

(iii)    Holder shall pledge its Conversion Interest in Holdco to the First Mortgagee in a manner acceptable to the First Mortgagee (however, in no event shall Holder's principals be required to deliver any guarantees), and (y) Holder shall deliver to Maker the Conversion Payment by surrendering the original version of this Note (or a certificate of reduction should Holder elect to convert less than the entire principal amount of this Note) and, if applicable, delivering additional cash payment.

(iv)    Intentionally omitted.

(v)    The effective date of the conversion under this Section 9 shall be the Conversion Date.

(vi)    If less than the entire principal balance of this Note shall be converted to equity, then, following any such conversion, interest shall continue to accrue and be payable at six (6%) percent per annum on the reduced principal balance of this Note, and such reduced principal balance shall be due and payable in full on the Maturity Date.

10.    **Expenses.**  In the Event of Default, Maker shall pay all reasonable costs and expenses, including reasonable attorneys' fees and expenses, incurred by Holder in collecting or enforcing this Note.

11.    **Successors and Assigns.**  Subject to the terms and conditions of Section 6 of this Note, this Note shall inure to the benefit of and be enforceable by Holder and its successors and assigns and shall be binding and enforceable against Maker and its successors and assigns. Notwithstanding the foregoing, Maker shall not assign its obligations hereunder without the prior written consent of Holder.

12.    **Severability.**  It is the desire and intent of the parties that the provisions of this Note be enforced to the fullest extent permissible under the law and public policies applied in each jurisdiction in which enforcement is sought. Accordingly, if any provision of this Note would be held to be invalid, prohibited or unenforceable in any jurisdiction for any reason, such provision, as

42521345;2

to such jurisdiction, shall be ineffective, without invalidating the remaining provisions of this Note or affecting the validity or enforceability of such provision in any other jurisdiction. Notwithstanding the foregoing, if such provision could be more narrowly drawn so as not to be invalid, prohibited or unenforceable in such jurisdiction, it shall, as to such jurisdiction, be so narrowly drawn, without invalidating the remaining provisions of this Note or affecting the validity or enforceability of such provision in any other jurisdiction.

13.    **Waivers.** Maker hereby waives grace (except as expressly provided herein), presentment, demand for payment, notice of dishonor, notice of protest, and protest in connection with the delivery, acceptance, performance, default, endorsement or guaranty of this Note. No delay by Holder in exercising any power or right hereunder shall operate as a waiver of any power or right, nor shall any single or partial exercise of any power or right preclude other or further exercise thereof, or the exercise of any other power or right hereunder or otherwise. No waiver or modification of the terms hereof shall be valid unless set forth in writing by Holder. The right to plead any and all statutes of limitation as a defense to any demands hereunder is hereby waived to the fullest extent permitted by law.

14.    **Modification.** No modification, alteration or change of any of the provisions hereof shall be effective unless in writing and signed by Maker and Holder and only to the extent set forth therein.

15.    **Valid Obligation.** Maker hereby certifies and declares that all acts, conditions and things required to be done and performed and to have happened precedent to the execution and delivery of this Note and to constitute this Note a valid obligation of Maker in accordance with its terms have been done, performed, and have happened in compliance with all applicable laws.

16.    **Governing Law.** This Note shall be governed by and construed in accordance with the laws of the State of New York, without giving effect to conflicts of law principles thereof. The undersigned (a) irrevocably submits to the nonexclusive jurisdiction of the State courts of the State of New York located in the County of New York and to the nonexclusive jurisdiction of the United States District Court for the Southern District of New York for the purpose of any suit, action or other proceeding arising out of or based upon this Agreement or the subject matter hereof or in any way connected to this Note and the indebtedness evidenced hereby, (b) waives, to the extent not prohibited by applicable law, and agrees not to assert, by way of motion, as a defense or otherwise, in any such proceeding brought in any of the above-named courts, any claim that it is not subject personally to the jurisdiction of such court, that it's property is exempt or immune from attachment or execution, that such proceeding is brought in an inconvenient forum, that the venue of such proceeding is improper, or that this Note or the subject matter hereof may not be enforced in or by such court, and (c) consents to service of process in any such proceeding in any manner permitted by the laws of the State of New York or by the United States District Court for the Southern District of New York, agrees that service of process by registered or certified mail, return receipt requested, is reasonably calculated to give actual notice, and, to the extent not prohibited by applicable law, waives and agrees not to assert by way of motion, as a defense or otherwise, in any such proceeding any claim that service of process made in accordance with this paragraph does not constitute good and sufficient service of process.

-6-

17.    **WAIVER OF JURY TRIAL**. TO THE EXTENT NOT PROHIBITED BY APPLICABLE LAW THAT CANNOT BE WAIVED, MAKER HEREBY WAIVES AND COVENANTS THAT IT/HE WILL NOT ASSERT (WHETHER AS PLAINTIFF, DEFENDANT OR OTHERWISE), ANY RIGHT TO TRIAL BY JURY IN ANY FORUM IN RESPECT OF ANY ISSUE, CLAIM OR PROCEEDING ARISING OUT OF THIS NOTE OR THE SUBJECT MATTER HEREOF OR IN ANY WAY CONNECTED WITH THE DEALINGS OF MAKER OR HOLDER IN CONNECTION WITH ANY OF THE ABOVE, IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING AND WHETHER IN CONTRACT, TORT OR OTHERWISE. Holder may file an original counterpart or a copy of this paragraph with any court as written evidence of the consent of Maker to the waiver of their rights to trial by jury.

18.    **Notices.**  Any notice or other communication given or made pursuant to this Note must be in writing and shall be delivered to the person to whom intended at the address set forth above (or at such other address as such person may designate by proper notice) by personal delivery, by nationally recognized courier (Federal Express, DHL, etc.) or by certified or registered mail, postage prepaid, and shall be deemed given when personally delivered or two (2) business days after deposit with a courier or five (5) business days after mailing.

19.    **Counterparts; Integration; Effectiveness**.  This Note and any amendments, waivers, consents or supplements hereto may be executed in counterparts, each of which shall constitute an original, but all taken together shall constitute a single contract. This Note constitutes the entire contract between the parties with respect to the subject matter hereof and supersedes all previous agreements and understandings, oral or written, with respect thereto. Delivery of an executed counterpart of a signature page to this Note by facsimile or in electronic (i.e., "pdf") format shall be effective as delivery of a manually executed counterpart of this Note.

20.    **Designation of Agent of Holder.**    All payments made pursuant to this Note shall be made to William G. Rainero as agent of Holder (the "Agent") and all notices required or desired to be given pursuant to this Note shall be made to Agent. Maker shall be entitled to rely on any demand, direction or other communication given by Agent as the authorized representative of Holder.

**Balance of page left blank intentionally.**

**IN WITNESS WHEREOF**, Maker has executed this Note as of the date first above written.

**MAKER**

**307 ASSETS LLC**
c/o Metrovest
11 East 44ᵗʰ Street, Suite 1001
New York, New York 10017

By: _____
George Filopoulos, President

-8-

4252134S;2

| **NYC DEPARTMENT OF FINANCE OFFICE OF THE CITY REGISTER** | |
|---|---|
| This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document. | 2017081500951009003E3E6F |

## RECORDING AND ENDORSEMENT COVER PAGE

PAGE 1 OF 13

| **Document ID: 2017081500951009** | Document Date: 08-04-2017 | Preparation Date: 08-16-2017 |
|---|---|---|
| Document Type: MORTGAGE | | |
| Document Page Count: 11 | | |

| **PRESENTER:** | **RETURN TO:** |
|---|---|
| KENSINGTON VANGUARD NATIONAL LAND 39 WEST 37TH ST TITLE NO.827878(S-NY-CP-JR)A HOLD FOR PICKUP / SEARCH NY NEW YORK, NY 10018 212-532-8686 mhunker@KVNATIONAL.COM | AKERMAN LLP 666 FIFTH AVENUE, 20TH FLOOR NEW YORK, NY 10103 Attn: Eric W. Olson, Esq. |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| MANHATTAN | 589 | 40 | Entire Lot | 307 AVENUE OF THE AMER |
| Property Type: COMMERCIAL REAL ESTATE | | | | |
| Borough | Block | Lot | Unit | Address |
| MANHATTAN | 589 | 39 | Entire Lot | 309 AVENUE OF THE AMER |
| Property Type: COMMERCIAL REAL ESTATE | | | | |

### CROSS REFERENCE DATA

CRFN_____ or DocumentID_____ or _____ Year____ Reel___ Page____ or File Number_____

### PARTIES

| **MORTGAGOR/BORROWER:** | **MORTGAGEE/LENDER:** |
|---|---|
| 307 ASSETS LLC C/O METROVEST, 11 EAST 44TH STREET, SUITE 1001 NEW YORK, NY 10017 | CIN CIN LLC 80 WASHINGTON PLACE NEW YORK, NY 10011 |

☒ Additional Parties Listed on Continuation Page

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 5,000,000.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 5,000,000.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 25,000.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 56,250.00 | | $ | 0.00 |
| Spec (Additional): | $ | 12,500.00 | | | |
| TASF: | $ | 0.00 | **RECORDED OR FILED IN THE OFFICE** | | |
| MTA: | $ | 15,000.00 | **OF THE CITY REGISTER OF THE** | | |
| NYCTA: | $ | 31,250.00 | **CITY OF NEW YORK** | | |
| Additional MRT: | $ | 0.00 | Recorded/Filed 08-31-2017 14:35 | | |
| TOTAL: | $ | 140,000.00 | City Register File No.(CRFN): | | |
| Recording Fee: | $ | 95.00 | **2017000326057** | | |
| Affidavit Fee: | $ | 0.00 | | | |

*Annette M Hill*

*City Register Official Signature*

**NYC DEPARTMENT OF FINANCE
OFFICE OF THE CITY REGISTER**



2017081500951009003C3CEF

| RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION) | | PAGE 2 OF 13 |
|---|---|---|
| Document ID: 2017081500951009 | Document Date: 08-04-2017 | Preparation Date: 08-16-2017 |
| Document Type: MORTGAGE | | |

**PARTIES**

**MORTGAGEE/LENDER:**
SEI INSIEME LLC
80 WASHINGTON PLACE
NEW YORK, NY 10011

*827878*

## SECOND MORTGAGE AND SECURITY AGREEMENT

THIS SECOND MORTGAGE AND SECURITY AGREEMENT (the "Second Mortgage") made as of the 4th day of August, 2017 by **307 ASSETS LLC**, a New York limited liability company maintaining an office at 11 East 44th Street, Suite 1001, New York, New York 10010 (the "Mortgagor"), to **CIN CIN LLC** and **SEI INSIEME LLC**, a New York limited liability company, having an address at 80 Washington Place, New York, New York 10011 ("Mortgagee").

### R E C I T A L :

WHEREAS, Mortgagor is the owner of the fee simple estate in the premises commonly known as 307 and 309 Avenue of the Americas, New York, New York (Block 589; Lots 39 and 40), as more particularly described on Exhibit A annexed hereto (the "Premises"), together with the buildings, structures and improvements thereon, and all air and development rights relating thereto; and

WHEREAS, Mortgagee has loaned to Mortgagor the sum of FIVE MILLION AND 00/100 DOLLARS (US$5,000,000.00) (the "Indebtedness"), as evidenced by that certain Promissory Note of even date herewith (the "Note") in the original principal amount of US$5,000,000.00; and

WHEREAS, Mortgagor has duly authorized the execution of this Second Mortgage and the other Loan Documents (as hereinafter defined) in order to secure the payment of the Note and the Indebtedness.

### G R A N T I N G   C L A U S E S :

NOW, THEREFORE, in order to secure the payment of the Indebtedness under the Note, together with interest thereon and all other sums payable as provided in the Note, and the payment and performance of all other obligations and liabilities of Mortgagor under this Second Mortgage and the other Loan Documents, Mortgagor does hereby mortgage, grant, bargain, sell, convey, and assign unto Mortgagee, subject to the terms and conditions of the First Mortgage (hereinafter defined) all the right, title and interest of Mortgagor in and to the following property described in Granting Clauses (a) through (e) inclusive (all of which such property is hereinafter collectively referred to as the "Mortgaged Property"):

(a) the fee simple interest, title and estate of Mortgagor in and to, and a lien on, the Premises, subject only to the Permitted Encumbrances (as hereinafter defined);

(b) all buildings, structures and improvements which are now or hereafter located upon the Premises (the "Improvements"), together with all of Mortgagor's right, title and interest in and to the easements thereof, and strips, gores, streets and ways adjacent thereto;

(c)    all machinery, apparatus, equipment, fixtures, furnishings and inventory, owned by Mortgagor, now or hereafter attached to or located on the Premises ("Equipment");

(d)    all awards or payments which may be made with respect to the Premises from the exercise of the right of eminent domain and all insurance or other proceeds of, and any unearned premiums on, any insurance policies covering the Premises; and

(e)    all plans, drawings, specifications, site plans, subdivision maps, sketches, samples, contracts and agreements, now or hereafter made, and all permits, certificates, warranties, guarantees and approvals with respect to the Premises.

TO HAVE AND TO HOLD, subject to the terms of the First Mortgage, the above granted and described unto and to the proper use and benefit of Mortgagee, and the successors and assigns of Mortgagee, forever.

PROVIDED, HOWEVER, that if Mortgagor shall pay to Mortgagee the Loan at the time and in the manner provided in the Note, this Second Mortgage and the other Loan Documents, and shall abide by and comply with each and every covenant and condition set forth herein, in the Note and in the other Loan Documents, then this Second Mortgage shall cease and be void.

AND Mortgagor covenants with and represents and warrants to Mortgagee as follows:

1.    **Certain Definitions.**  The following terms shall have the meanings set forth below, unless the context of this Second Mortgage otherwise requires:

(a)    "*Environmental Law*" shall mean any federal, state or local law, order, ordinance, rule, regulation or judgment, whether now existing or hereafter in force relating to the use, storage, treatment, release, transportation, disposal or handling of any Hazardous Materials.

1.    (b)    "*First Mortgage*" shall mean that first mortgage lien on the Premises made by Mortgagor to Castellan Capital, dated of even date herewith in the original consolidated principal amount of $8,000,000.00, , which amount may be increased after the first (1st) anniversary of the date of this Mortgage.

(c)    "*Hazardous Materials*" shall mean any hazardous or toxic materials, wastes or substances which are defined, determined or identified as such in any Environmental Law.

(d)    "*Involuntary Rate*" shall mean eighteen percent (18%) per annum, or the maximum interest rate which Mortgagee may by law charge Mortgagor, whichever is lower.

(e)    "*Loan*" shall mean the principal from time to time outstanding, together with all interest due and payable thereon, under the Note, and all other sums at any time secured by or otherwise due under this Second Mortgage, the Note or any other Loan Document.

(f)    "*Loan Documents*" shall refer collectively to this Second Mortgage, the Note and all other documents and instruments delivered to Mortgagee during the term of this Second Mortgage to evidence and/or secure payment of the Loan, and all renewals, additions, supplements, amendments, modifications, consolidations, spreaders, restatements, extensions and replacements hereof and thereof.

(g)    "*Mortgage Policies*" shall have the meaning as set forth in Section 4 of this Mortgage.

(h)    "*Mortgagee*" shall mean the Mortgagee herein named or the holder or holders of this Second Mortgage at any given time.

(i)    "*Mortgagor*" shall mean the Mortgagor herein named, any subsequent owner or owners of the Mortgaged Property.

(j)    "*Operating Agreement*" shall have the meaning as set forth in Section 14 of this Mortgage.

(k)    "*Permitted Encumbrances*" shall mean, collectively, those liens, encumbrances and other matters affecting title to the Premises listed as exceptions to title in the policy of title insurance insuring this Second Mortgage.

(l)    "*State*" shall mean the State of New York.

2.    **Payment of Loan**.  Mortgagor will pay the Loan at the time, and in the manner, provided in the Note and in this Second Mortgage.

3.    **Representations and Warranties**.

(a)  Mortgagor represents and warrants to Mortgagee that:

(i) the execution and delivery by Mortgagor of this Second Mortgage and the other Loan Documents, and Mortgagor's performance hereunder and thereunder, have been duly authorized by all necessary legal action, resolutions, consents and approvals;

(ii) there are no actions, suits, injunctions, orders, decrees or proceedings pending against, or affecting or, to the best of Mortgagor's knowledge, against Mortgagor or the Mortgaged Property; and

(iii) Mortgagor is the sole and lawful owner of fee title to the Premises and has good and marketable fee simple title thereto, free and clear of all other mortgages, liens and encumbrances, other than Permitted Encumbrances.

4.    **Insurance; Casualty**.

(a)    Subject to the rights of the First Mortgage, Mortgagor shall keep the Mortgaged Property insured against loss or damage by fire, standard extended coverage perils, public liabilities and such other hazards, risks, liabilities and damage (including bodily injury,

death and property damage) in amounts as required pursuant to the terms and conditions of the First Mortgage, which terms and conditions are incorporated in this Second Mortgage by this reference (the "Mortgage Policies"). The Mortgage Policies shall name Mortgagee as loss payee and/or additional insured, as the case may be, subject to the lien of the First Mortgage.

(b)    Subject to the rights of the First Mortgage, if any portion of the Premises shall be damaged or destroyed, in whole or in part, by fire or other casualty, Mortgagor will give prompt notice thereof to Mortgagee. Any monies received for any loss under the Policies (other than the liability policies) shall be paid and/or disbursed pursuant to the terms and conditions of the First Mortgage, which terms and conditions are incorporated in this Mortgage by this reference.

5.    <u>Payment of Taxes, etc.</u>  Mortgagor shall pay all Taxes prior to the date upon which any fine, penalty, interest or cost may be added thereto, or imposed by law, for the nonpayment thereof. If Mortgagor shall fail to pay any such Taxes, Mortgagee may, but shall not be obligated to, make such payment on behalf and for the benefit of Mortgagor, and the amount so paid, shall become immediately due and payable by Mortgagor, and shall be secured by the lien of this Second Mortgage.

6.    <u>Environmental Matters.</u>  Mortgagor agrees to defend, indemnify and hold harmless Mortgagee from and against any and all losses, liabilities, obligations, fines, damages, judgments, penalties, claims, charges, costs and expenses (including, without limitation, reasonable fees and disbursements of counsel, consultants and experts), which may be paid, incurred or suffered by, or asserted against, Mortgagee by any person, entity or governmental agency for, with respect to, arising out of or in connection with (either directly or indirectly) the presence on or in, or the escape, seepage, leakage, spillage, discharge, emission, discharging or release from, the Premises or any other Mortgaged Property, of any Hazardous Materials or any other losses, liabilities, suits, obligations, fines, damages, judgments, penalties, claims, charges, costs and expenses directly or indirectly attributable to any Environmental Law affecting the Premises. Notwithstanding the foregoing provision Mortgagor's indemnity does not extend to events which occurred prior to the date hereof or during the time Mortgagor does not have dominion and control of the Mortgaged Property due to enforcement actions undertaken by Mortgagee (for example appointment of a receiver).

7.    <u>Condemnation.</u>  In the event of any taking by any public or quasi-public authority through eminent domain or otherwise, whether permanent or temporary (a "Taking"), any award or payment therefor shall be disbursed pursuant to the terms and conditions of the First Mortgage, which terms and conditions are incorporated in this Mortgage by this reference.

9.    <u>Maintenance of the Mortgaged Property</u>.  Mortgagor shall cause the Premises, Equipment and all other Mortgaged Property to be maintained in good condition and repair. Mortgagee acknowledges that it is the intention of Mortgagor to redevelop the Premises and, as such, Mortgagor may alter, modify, demolish, repair, restore and/or replace the Mortgaged Property in the furtherance of such redevelopment, in a manner consistent with the Operating Agreement.

10.    <u>Use of Premises</u>.  Mortgagor may use or permit the use of the Premises in any manner permitted pursuant to applicable law.

11.    **Compliance with Laws**. Mortgagor shall, subject to the terms of the undertaking agreement executed between Mortgagor and Mortgagee, dated the date hereof, promptly cure all violations of law affecting the Premises and shall comply in all material respects with all laws, ordinances, orders, rules and regulations of all Federal, State and municipal governments, which at any time are applicable to the Premises and/or Equipment or any other Mortgaged Property.

12.    **After-Acquired Property**. All right, title and interest of Mortgagor in and to all improvements, betterments, replacements, additions and appurtenances of and to the Mortgaged Property hereafter acquired, constructed, or placed on the Premises shall become subject to the lien of this Second Mortgage.

13.    **Estoppel Certificates / Subordination**.

(a)    Mortgagor shall, at Mortgagor's expense, within ten (10) days after written request by Mortgagee, furnish Mortgagee with a statement, duly acknowledged and certified, setting forth the then current amount of the Loan (principal and interest then due) and the offsets or defenses thereto, if any.

(b)    This Second Mortgage shall at all times be subject and subordinate to the lien of the First Mortgage, which subordination is self-operative and shall require no further instrument, writing or approval. Notwithstanding the foregoing, if required by the holder of the First Mortgage, Mortgagee shall enter into a usual and customary form of subordination and inter-creditor agreement with respect to the lien of this Second Mortgage.

14.    **Sale or Transfer of Mortgaged Property**. Except as otherwise expressly set forth herein or as may otherwise be permitted pursuant to that certain Operating Agreement of Mortgagor dated as of even date herewith (the "Operating Agreement"), no part of the Mortgaged Property shall be sold, transferred or conveyed without the prior written consent of Mortgagee in each instance, and this Mortgage shall become due and payable in full upon any sale, transfer or conveyance in violation of this Mortgage.

15.    **Notice**. Any notice, demand, statement, request or consent made hereunder shall be in writing and shall be delivered by a nationally recognized overnight delivery service or certified mail, return receipt requested, and shall be deemed given two (2) business days after the date post-marked or deposited with the delivery service company, as the case may be, and addressed as follows:

If to Mortgagor:

307 Assets LLC
11 East 44th Street, Suite 1001
New York, New York 10010
Attention, Mr. George Filopoulos

ANDA Partners
16 N. Marengo Avenue, Suite 415
Pasadena, California 91101

with a copy to:

Donovan LLP
152 Madison Avenue, 14th Floor
New York, New York 10016
Attention: Nichols T. Donovan Esq.

with a copy to:

The Law Offices of Richard C. Hamlin LLC
928 Broadway, Suite 1005
New York, New York 10010
Attention: Richard C. Hamlin, Esq.

If to Mortgagee:

CIN CIN LLC and SEI INSIEME LLC
80 Washington Place
New York, New York 10011

with a copy to :

Akerman LLP
666 Fifth Avenue, 20th Floor
New York, New York 10103
Attention: Eric W. Olson, Esq

Each party may designate a change of address by notice to the other party, given at least fifteen (15) days before such change of address is to become effective.

16. **Right of Entry**. At all reasonable times, during regular business hours, and upon prior written notice to Mortgagor, Mortgagee and its agents shall have the right to enter and inspect the Premises and the Equipment.

18. **Performance of Other Agreements**. Mortgagor shall observe and perform, or cause to be observed and performed, each and every term, covenant and obligation to be observed or performed by Mortgagor pursuant to the terms of the Loan Documents.

19. **Defaults**. Mortgagor shall be in default hereunder upon the happening of any Event of Default, as such term is defined in the Note.

20. **Remedies**. Upon the occurrence of any Event of Default, the principal amount and any other amount due in respect of the Note shall, upon not less than thirty (30) days prior written notice to Mortgagor, automatically and immediately become due and payable; all without further presentment, protest, demand or notice of any kind, all of which are expressly waived by Mortgagor. Mortgagee shall have all rights and remedies available to Mortgagee, at law and in equity, in the event of Mortgagor's default hereunder.

21. **Appointment of Receiver**. In any action to foreclose this Second Mortgage, Mortgagee shall be entitled to the appointment of a receiver, without notice to Mortgagor and without regard to the value of the Mortgaged Property.

22. **Action on Portion of Loan; Partial Foreclosure**. Mortgagee shall have the right to take action to recover any sum or sums which constitute a part of the Loan as the same become due, without regard to whether or not the balance of the Loan shall be due, and without prejudice to the right of Mortgagee thereafter, to bring an action of foreclosure.

23. **Marshalling**. Mortgagor waives and releases to the fullest extent permitted by law, and with awareness of the consequences thereof, any right to have the Mortgaged Property marshalled.

24. **Expenses of Mortgagee**. Mortgagor shall be responsible for the payment of all costs and expenses incurred by Mortgagee in connection with the enforcement of this Second Mortgage and the other Loan Documents, including reasonable attorney's fees and court costs, including, without limitation, the fees and expenses incurred in connection with any action to foreclose this Second Mortgage.

25. **Non-Waiver**. No remedy herein conferred upon or reserved to Mortgagee is intended to be exclusive of any other remedy or remedies, and each and every such remedy shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity. No delay or omission of Mortgagee to exercise any such right or power accruing upon the occurrence of any default hereunder or any other Loan Document shall be a waiver of any such default.

26. **Liability**. If Mortgagor consists of more than one person, the obligations and liabilities of each such person hereunder shall be joint and several.

27. **Security Agreement**. This Second Mortgage constitutes both a real property mortgage and a "security agreement", within the meaning of the Uniform Commercial Code, and the Mortgaged Property includes both real and personal property and all other rights and interests, whether tangible or intangible in nature, of Mortgagor in the Mortgaged Property. Mortgagor, by executing and delivering this Second Mortgage, has granted to Mortgagee, as security for the Loan, a security interest in the Mortgaged Property. Upon the occurrence of an Event of Default, Mortgagee, in addition to any other rights and remedies which it may have, shall have and may exercise immediately and without demand, any and all rights and remedies granted to a secured party upon default under the Uniform Commercial Code.

28. **Further Assurances**. Mortgagor shall, at its cost, on demand, do, execute, acknowledge and deliver all further acts, deeds, conveyances, mortgages, assignments, notices,

transfers and assurances as Mortgagee shall from time to time reasonably require (a) for better assuring, conveying, assigning, transferring and confirming unto Mortgagee the Mortgaged Property or such property which Mortgagor may be or may hereafter become bound to convey, mortgage or assign to Mortgagee and (b) for carrying out the intention or facilitating the performance of the terms of this Second Mortgage and the other Loan Documents.

29. **Filing of Mortgage, etc.** Mortgagor will cause this Second Mortgage, and any security instrument creating a lien upon the Mortgaged Property, and each instrument of further assurance, including UCC-1 financing statements, to be filed, or recorded in such manner and in such places as may be required by law in order to fully perfect and protect the lien hereof upon the Mortgaged Property. Mortgagor will pay all filing, registration or recording fees, and all expenses incident to the preparation, execution and acknowledgement of this Second Mortgage, any mortgage supplemental hereto, any security instrument with respect to the Mortgaged Property and any instrument of further assurance, and all taxes, duties, assessments and charges in connection with the execution, delivery and/or recording of this Second Mortgage, any mortgage supplemental hereto, any security instrument with respect to the Mortgaged Property, any instrument of further assurance or any other Loan Document.

30. **Usury Laws.** This Second Mortgage and the Note are subject to the express condition that at no time shall Mortgagor be obligated or required to pay interest on the principal balance due under the Note at a rate which could subject the holder of the Note to either civil or criminal liability as a result of being in excess of the maximum interest rate which Mortgagor is permitted by law to contract or agree to pay.

31. **Expenses.** Mortgagor agrees to pay all fees, costs, charges, expenses and disbursements with respect to the Loan or its making, or in any way connected therewith, including, without limiting the generality thereof, the reasonable fees and expenses of the Mortgagee's counsel for the preparation of the Loan Documents and the examination of title, survey and tenant leases and for closing the Loan, title examination and title insurance premiums, survey costs, recording and filing fees, mortgage fees, municipal and departmental searches, real estate tax service charges, documentary stamps, mortgage recording tax, and all other taxes, fees and expenses payable in connection with the Loan.

32. **Severability.** If any term, covenant or condition of this Second Mortgage or the Note shall be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision hereof or the validity of this Second Mortgage, and this Second Mortgage shall be construed without such provision.

33. **No Oral Change.** This Second Mortgage may not be modified, amended, or terminated orally, but only by an agreement in writing signed by the party against whom the enforcement of the modification, amendment, or termination is sought.

34. **Statutory Provisions.** All of the terms, covenants, and conditions hereof shall be construed as affording Mortgagee rights in addition to, and not exclusive of, the rights conferred under the provisions of Sections 254, 271 and 272 of the Real Property Law of the State of New York.

35. **Miscellaneous.**

(a)    This Second Mortgage, the Loan Documents and any other instruments made in connection herewith, may be assigned by the Mortgagee without notice to, or the consent of, Mortgagor.

(b)    In compliance with Section 13 of the Lien Law, Mortgagor shall receive the advances secured hereby and shall hold the right to receive such advances as a trust fund, to be applied first for the purpose of paying the cost of any improvements in or upon the Premises and shall apply the advances first to the payment of the cost of such improvements before using any part of the total of the same for any other purpose.

(c)    In the event that Mortgagor shall sell or refinance the Mortgaged Property, Mortgagee hereby consents to the assignment of the lien of this Seond Mortgage in connection therewith, provided that (i) the Loan shall be paid by Mortgagor in full and (ii) Mortgagor shall pay to Mortgagee fees and expenses charged by Mortgagee's counsel to prepare such assignment and to attend to the execution and delivery thereof, not to exceed $1,500.00 in the aggregate.

*[Signature Page to Follow]*

**IN WITNESS WHEREOF**, this Second Mortgage has been duly executed by Mortgagor on the day and year first above written.

**BORROWER:**

307 ASSETS LLC

By: _____
George Filopoulos
Authorized Signatory

**Acknowledgement**

STATE OF NEW YORK    )
                                        ss.:
COUNTY OF NEW YORK  )

On the 4 day of _August_ in the year 2017, before me, the undersigned, a Notary Public in and for the State of New York, personally appeared GEORGE FILOPOULOS, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

BRYAN PAUL MCCROSSEN
Notary Public, State of New York
No. 02MC6346914
Qualified in Nassau County
Commission Expires August 22, 20__

_____
NOTARY PUBLIC

SEAL

## SECOND MORTGAGE AND SECURITY AGREEMENT

### 307 ASSETS LLC

- to -

### CIN CIN LLC and SEI INSIEME LLC

Premises:    307 and 309 Avenue of the Americas
New York, New York

Block:    589
Lot:    39 and 40

Amount:    $5,000,000.00

Dated:    August 4, 2017

**After recording, please return to:**

Akerman LLP
666 Fifth Avenue, 20th Floor
New York, NY 10103
Attention: Eric W. Olson, Esq.

# EXHIBIT

# B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------x

307-309 SIXTH AVENUE LLC,

                              Plaintiff,

              - against -

307 ASSETS LLC; GEORGE FILOPOULOS; THE
EMILIO HOLDINGS LLC; THE GALINN FUND
LLC; THE PEOPLE OF THE STATE OF NEW YORK;
NEW YORK STATE DEPARTMENT OF TAXATION
AND FINANCE; NEW YORK CITY DEPARTMENT
OF FINANCE,

                              Defendants.
-------------------------------------------------------------------X

Index No. 850138/2020

**NOTICE OF SALE**

**PLEASE TAKE NOTICE THAT,** pursuant to the Judgment of Foreclosure and Sale dated June 1, 2022 and entered on June 6, 2022, I will sell at public auction at the New York County Courthouse, at the portico of the Courthouse located at 60 Centre Street, New York, New York, on December 14, 2022 at 2:15 p.m., prem. k/a 307/307-A Sixth Avenue, New York, NY (Block: 589; Lot 40) and 309 Sixth Avenue, New York, NY (Block: 589; Lot: 39) (the "Properties"). Approx. amt of judgment is $13,686,392, plus costs, attorneys' fees and interest. Sold subject to terms and conditions of filed judgment and terms of sale.

                    Bruce Lederman, Esq., Referee.

Dated: Cedarhurst, New York
       October 25, 2022

                    **JACOBOWITZ NEWMAN TVERSKY LLP**
                    *Attorneys for Plaintiff*

                    By: /s/ Aviva Francis
                         Aviva Francis
                    377 Pearsall Avenue, Suite C
                    Cedarhurst, New York 11516
                    (516) 545-0343
                    afrancis@jntllp.com

FILED: NEW YORK COUNTY CLERK 10/25/2022 03:52 PM    INDEX NO. 850138/2020
NYSCEF DOC. NO. 58                                   RECEIVED NYSCEF: 10/25/2022

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
----------------------------------------------------------------------x
307-309 SIXTH AVENUE LLC,

                              Plaintiff,

                                              Index No. 850138/2020

            - against -

307 ASSETS LLC; GEORGE FILOPOULOS; THE
EMILIO HOLDINGS LLC; THE GALINN FUND
LLC; THE PEOPLE OF THE STATE OF NEW YORK;
NEW YORK STATE DEPARTMENT OF TAXATION
AND FINANCE; NEW YORK CITY DEPARTMENT
OF FINANCE,

                              Defendants.
----------------------------------------------------------------------X

### AFFIRMATION OF SERVICE

        Aviva Francis, an attorney duly admitted to practice before the Courts of this State,
affirms the following under penalty of perjury: I am over the age of eighteen and not a party to
this action. On October 25, 2022, I caused a copy of the Notice of Sale to be served on the
parties listed below via first-class mail (USPS), addressed as follows:

        307 ASSETS LLC
        11 East 44th Street, Suite 1001,
        New York, NY 10017

        GEORGE FILOPOULOS;
        145 East 92nd Street, Apt. 5C
        New York, NY 10128

        THE EMILIO HOLDINGS LLC
        11 East 44th Street, Suite 1001,
        New York, NY 10017

        THE GALINN FUND LLC;
        399 Knollwood Road Suite 318,
        White Plains, NY 10603

2

22-11670-jpm    Doc 2-1    Filed 12/14/22    Entered 12/14/22 12:30:40    Exhibits A
B and C    Pg 31 of 35

THE PEOPLE OF THE STATE OF NEW YORK
Robert Abrams Building for Law & Justice, 2nd Floor,
Albany, NY 12232

NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE
W.A. Harriman Campus Building 9,
Albany, NY 12207


NEW YORK CITY DEPARTMENT OF FINANCE
100 Church Street
NY, NY 10007

307 ASSETS LLC
307/307-A Sixth Avenue,
New York, NY 10014
*and*
309 Sixth Avenue
New York, NY 10014

Dated: Cedarhurst, NY
       October 25, 2022

/s/ Aviva Francis
Aviva Francis

3

# EXHIBIT

# C

BRONSON LAW OFFICES, P.C.
*Proposed Counsel for Debtor and Debtor in Possession*
480 Mamaroneck Ave.
Harrison, NY 10528
914-269-2530
H. Bruce Bronson
hbbronson@bronsonlaw.net

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

In re:                                              Case No.  22-11670 (JPM)

SEI INSIEME LCC,                                    Chapter 11

                        Debtor

-----------------------------------------------------------x


**<u>AFFIRMATION IN SUPPORT OF APPLICATION FOR ORDER TO SHOW CAUSE.</u>**

STATE OF NEW YORK          )
                           ) ss.:
COUNTY OF WESTCHESTER      )

        The undersigned, H. Bruce Bronson, Esq., an attorney duly admitted to practice law in

the state of New York and before the courts of this district affirm the following under penalty of

perjury:

        1.      Sei Insieme LLC ("**<u>Debtor</u>**") filed for Chapter 11 on December 14, 2022 (the

"**<u>Petition Date</u>**").

        2.      The Debtor holds a second mortgage that encumbers the properties at 2306

Albemarle Road #2308, Brooklyn, NY a/k/a 2-12 Oakland Place, Brooklyn, NY, which has

approximately 33 rental units (the "**<u>Properties</u>**").

3.    The Debtor has also used this second mortgage interest as part of the collateral for another loan pursuant to a collateral assignment which is attached to the Motion as "Exhibit A".

4.    The holder of the first mortgage on the Properties has brought a foreclosure action in the Supreme Court of the County of New York at Index No. 850138/2020 and obtained a Judgement of Foreclosure by default and sale dated June 1, 2022 and entered on June 6, 2022.

5.    There is a foreclosure sale scheduled for December 14, 2022 at 2:15 p.m., the Notice of Sale is attached to the Motion as "Exhibit B".

6.    On December 13, 2022, the Debtor filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York.

7.    After the Debtor filed the chapter 11 case the Debtor sent notice of the filing and requested the sale be stopped.

8.    I personally talked with the appointed Referee and Plaintiff's counsel and was advised the sale would proceed unless a state or federal court order was issued to stay it.

9.    The second mortgage is property of the estate as and the central asset of the estate and necessary for any reorganization.

10.    Under the circumstances, the Debtor respectfully submits that expedited consideration of this matter is necessary and appropriate.

11.    Entering the Order to Show Cause will allow the Debtor to preserve the property of the estate and succeed in reorganization under chapter 11.

12.    This affirmation is in support of a request for an Order to Show cause pursuant to Bankruptcy Rule 9077-1.

2

13.     No previous application for an order to show cause has been made.

Dated:  Harrison, NY
        December 14, 2022

                        /s/ H. Bruce Bronson, Esq.
                        H. Bruce Bronson
                        Bronson Law Offices, P.C.